## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

\*

**CHELSEA C. ELINE** *et al.*,                      \*

    **Plaintiffs**                                        \*

    **v.**                                                    \*                    **CIVIL NO.  JKB-18-0145**

**TOWN OF OCEAN CITY, Md.,**                \*

    **Defendant**                                        \*

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*

## MEMORANDUM AND ORDER

### *I. Background*

On December 7, 2018, the Court held a hearing on Plaintiffs' motion for preliminary injunctive relief (ECF No. 21). Both Plaintiffs[1] and the Defendant were represented by counsel and presented evidence and arguments in support of their respective positions. Plaintiffs, all of whom are females, argue they have a "legal right to be bare-chested, in public, in the same places that men are permitted to be bare-chested, for purposes other than breastfeeding." (Mot. Prelim. Inj. Supp. Mem. 1, ECF No. 22.) From that contention, Plaintiffs further argue the Town of Ocean City, Maryland ("Ocean City"), has denied them equal protection of the law by enacting and enforcing Emergency Ordinance 2017-10, which bans "female bare-chestedness in public while permitting male bare-chestedness." (*Id.*) Plaintiffs thus assert violation of their rights under the Fourteenth Amendment to the United States Constitution and its counterpart in the Maryland Declaration of Rights, Article 46.

---

[1] Plaintiffs are Chelsea C. Eline, Megan A. Bryant, Rose R. MacGregor, Christine E. Coleman, and Angela A. Urban.

## II. Standard for Preliminary Injunctive Relief

In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court set forth the following standard for preliminary injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest.

*Id.* at 20. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Courts are called upon to balance a plaintiff's claims of injury against the burdens to be imposed upon the defendant, and they must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24.

## III. Text of the Ordinance

Sec. 58-191. - Legislative findings.

(a) There is no constitutional right for an individual to appear in public nude or in a state of nudity. It does not implicate either the First Amendment to the United States Constitution, the right to privacy, or a protected liberty interest. It lacks any communicated value that might call for First Amendment protection. Nor does it implicate the right of privacy or the right to be alone: one does not have right to impose one's lifestyle on others who have an equal right to be left alone.

(b) Whatever personal right one has to be nude or in a state of nudity, that right becomes subject to government interest and regulation when one seeks to exercise it in public.

(c) A gender-based distinction challenged under the equal protection clause of the United States Constitution is gauged by an important governmental interest that is substantially accomplished by the challenged discriminatory means.

(d) Protecting the public sensibilities is an important governmental interest based on an indisputable difference between the sexes. Further, a prohibition against females baring their breasts in public, although not offensive to everyone, is still seen by society as unpalatable.

2

(e) The equal protection clause does not demand that things that are different in fact be treated the same in law, nor that a government pretend there are no physiological differences between men and women.

(Ord. No. 2017-10, 6-10-2017)

Sec. 58-192. - Definitions.

Nude, or a State of nudity means the showing of the human male or female genitals, pubic area, vulva, anus, or anal cleft with less than a full opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state.

Specified anatomical areas means:

(1) The human male genitals in a discernibly turgid state, even if completely and opaquely covered; or

(2) Less than completely and opaquely covered human genitals, pubic region, anal cleft, or a female breast below a point immediately above the top of the areola.

(Ord. No. 2017-10, 6-10-2017)

Sec. 58-193. -Violations.

It shall be unlawful for any person to be on the beach, boardwalk, public parks, parking lots, streets, avenues, alleys or any other public place with the person's specified anatomical areas nude or in a state of nudity.

(Ord. No. 2017-10, 6-10-2017)

Sec. 58-194. - Penalties.

Any person who is found to be in any violation of this article shall be deemed to be guilty of a municipal infraction and be subject to a fine of up to $1,000.00.

(Ord. No. 2017-10, 6-10-2017)

*IV. Analysis*

In a case challenging a legislative enactment as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a classification based on gender must survive heightened scrutiny in order to pass constitutional muster. *Goulart v. Meadows*, 345 F.3d 239, 260 (4th Cir. 2003). The burden of justification for the classification rests upon the governmental defendant. *United States v. Virginia*, 518 U.S. 515, 533 (1996). Thus, in the instant case, Ocean City "must show at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* (alteration in original) (internal quotation marks omitted). *See also City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985) ("A gender classification fails unless it is substantially related to a sufficiently important governmental interest.").

The Ocean City ordinance at issue, codified as sections 58-191—194, sets forth various legislative findings, including, "Protecting the public sensibilities is an important governmental interest based on an indisputable difference between the sexes. Further, a prohibition against females baring their breasts in public, although not offensive to everyone, is still seen by society as unpalatable." [2] Sec. 58-191(d). In keeping with that finding, the ordinance prohibits public nudity, defined in part as "[l]ess than [a] completely and opaquely covered . . . female breast below a point immediately above the top of the areola." Sec. 58-192(2).

The Court discerns no material difference between the Ocean City ordinance and the quite similar law at issue in *United States v. Biocic*, 928 F.2d 112 (4th Cir. 1991). In that case,

---

[2] The Court interprets this second quoted sentence as meaning the *act* of females baring their breasts in public, although not offensive to everyone, is still seen by society as unpalatable, rather than meaning the *prohibition* of the act is unpalatable. This interpretation is consistent with the wording of the ordinance's prohibition of public nudity.

the plaintiff claimed a denial of equal protection after she had been cited for violating a United States Fish and Wildlife regulation that prohibited, on any national wildlife refuge, any act of indecency as defined by State or local law.   The particular law at issue was § 9.3 of the Accomack County, Virginia, Code, which prohibited public nudity, defined in part as "the showing of the female breast with less than a fully opaque covering on any portion thereof below the top of the nipple."   928 F.2d at 113.   The Court found no constitutional violation by enforcement of the code section.   With regard to equal protection, the Court assumed without deciding "that a distinction based upon anatomical differences between male and female is gender-based for equal protection analysis purposes," but then went on to decide "that the distinction . . . is one that is substantially related to an important governmental interest, hence does not deny equal protection." *Id.* at 115.   The Court identified the important governmental interest as "protecting the moral sensibilities of that substantial segment of society that still does not want to be exposed willy-nilly to public displays of various portions of their fellow citizens' anatomies that traditionally in this society have been regarded as erogenous zones.   These still include (whether justifiably or not in the eyes of all) the female, but not the male, breast." *Id.* at 115-16.

Other cases have been in accord with the *Biocic* decision.   *See, e.g., Free the Nipple – Springfield Residents Promotion Equality v. City of Springfield, Missouri*, Case No. 15-3467-CV-S-BP, 2017 WL 6815041 (W.D. Mo. Oct. 4, 2017); *Book v. City of Daytona Beach, Florida*, Case No. 6:08-cv-1180-Orl-28DAB, 2009 WL 3720932 (M.D. Fla. Nov. 5, 2009); *C.T. v. Indiana*, 939 N.E.2d 626 (Ind. Ct. App. 2010); *City of Bowling Green v. Bourne*, Case No. WD-07-007, 2007 WL 3120191 (Ohio Ct. App. Oct. 26, 2007); *Frandsen v. County of Brevard*, 800

So. 2d 757 (Fla. Dist. Ct. App. 2001); *New Jersey v. Vogt*, 775 A.2d 551 (N.J. Super. Ct. App. Div. 2001).

Plaintiffs cite one court decision from the District of Colorado that reached an opposite conclusion. *See Free the Nipple—Fort Collins v. City of Fort Collins, Colorado*, 237 F. Supp. 3d 1126 (D. Colo. 2017). That case is currently on appeal to the Tenth Circuit, No. 17-1103. Whatever the outcome in that decision, it does not bind this Court. Instead, this Court must respect *Biocic* as stating the law in the Fourth Circuit.

The same public sensibilities noted in *Biocic* underlie the Ocean City ordinance. At the hearing, the Court allowed the parties to present evidence as to whether the ordinance accurately reflects the sensibilities of the citizens of and visitors to Ocean City. Because Ocean City has the burden of justification for its ordinance, it went first in the presentation of evidence. Ocean City presented three witnesses who testified about public sensibilities.

The first witness was Ocean City Mayor Richard Meehan who started living in Ocean City in 1971. He is a real estate agent. In 1985, he was elected to the City Council. Meehan became the Mayor in 2006 and has been elected to fill that office at least six times since 2006. He was most recently reelected in 2018 on a platform to support Ocean City's "family values"; if someone asked him during the campaign before the 2018 election about the ordinance, he said he supported it.

Meehan testified that policies are determined for Ocean City through the Council's passing of ordinances that are consistent with the views of the electorate. On a daily basis, Meehan indicated he makes himself as accessible as possible to enable him to determine the public's views. He encounters people wherever he goes in the city and engages in conversation with them; additionally, he responds to telephone calls and email messages. Also, he attends

various meetings, including Council meetings and meetings of the Tourism Commission, among others. The Council meetings on the first and third Mondays of the month are recorded and made available on Ocean City's website. Members of the public are free to express themselves at the Council meetings by signing up for a time slot and speaking to the Council. In addition, the Council has public work sessions on the second and fourth Tuesdays of the month. Meeting announcements are made on the website and are sent to the media and anyone who signs up to receive the announcements. Meehan said he participates in the Council's discussions regarding proposed ordinances, but does not have a vote; he can, however, veto any ordinance passed. Meehan said he attends other events such as meetings of the Chamber of Commerce and the Hotel-Motel-Restaurant group.

He said that, for a number of years, Ocean City has positioned itself as a family vacation destination and has marketed itself accordingly. Meehan said that tourism surveys of visitors to Ocean City overwhelmingly support its goal of being a "family-friendly" vacation destination. In consequence of that fact, the city's primary focus is on the twin goals of public safety and promotion of tourism. Meehan said he first became aware of the instant controversy because of an inquiry to the Ocean City Beach Patrol by a female who wanted to know what would happen if she went topless on the beach. The Worcester County State's Attorney then requested an opinion from the Maryland Attorney General as to the lawfulness of not allowing female toplessness in Ocean City.

The inquiry became a subject of public discussion in May and June 2017 through reports in the news media as well as communications on social media. Meehan testified that people who contacted the city government were upset and concerned and said they would not return to Ocean City if female toplessness were allowed. He said the issue was marked by the passion of those

7

who were concerned about whether to keep their Ocean City properties or even to visit Ocean City.   In response to the controversy, Ocean City issued a statement on its website on June 9, 2017, that "the Town of Ocean City is not a topless beach and will not become a topless beach." (Def.'s Resp., Attachment 1, ECF No. 27-3.)   At that point, the city indicated it was "still anxiously awaiting" the requested opinion of the Attorney General.   (*Id.*)   On June 10, 2017, the seven-member Council went ahead and passed the subject ordinance on an emergency basis to let the public know what Ocean City's official stance was.   The vote was unanimous.   The Council deemed enactment of the ordinance an emergency because of the need to take immediate action in response to public outcry.   Meehan indicated that the emails he received about the issue far exceeded those relating to any prior issue in Ocean City.   Although he received many complaints about the potential for female toplessness before the ordinance was passed, he has received no complaint about the ordinance since its passage.[3]

The next witness to testify on Ocean City's behalf regarding public sensibilities was Mary Knight, a twenty-two-year resident of the city and a member of its City Council for the past twelve years.   She has served as chairperson of the Tourism Commission for eight years.   In the Spring of 2017, constituents, tourists, and nonresident taxpayers expressed concerns about the possibility that Ocean City would allow female toplessness in public.   The concerns were

---

[3] On June 14, 2017, counsel to the Maryland General Assembly and chief counsel of the Opinions and Advice Division of the Maryland Office of the Attorney General issued their opinion that "Maryland courts would hold that prohibiting women from exposing their breasts in public while allowing men to do so under the same circumstances does not violate the federal or State Constitution." (MOAG Op., Def.'s Opp'n Ex. A, Attachment 3, ECF No. 27-5.) They concluded that such a prohibition would survive both the intermediate scrutiny of the federal Equal Protection Clause as well as the strict scrutiny of Maryland's Equal Rights Amendment if challenged in Maryland's courts. (*Id.*)   The opinion was qualified by the authors' note that their advice "should not be read to call into question a mother's right to breast-feed her child in public as the General Assembly has specifically recognized a woman's right to do so." (*Id.* n.1.)   The authors also encouraged law enforcement officials to consider "context when exercising their enforcement discretion" and to apply Maryland's indecency laws "no more broadly than public sensibilities require."

expressed to her when she was out in public and also by email and telephone calls. No one expressed to her a desire for allowance of female toplessness in Ocean City's public spaces. She testified that the ordinance reflects the public sensibilities of people, both those in town and those who visit from out of town.

The final witness presented by Ocean City about public sensibilities was Melanie Pursel, who is president and chief executive officer of the Ocean City Chamber of Commerce. She said that the Chamber of Commerce maintains a visitor center. She said the Chamber also receives telephone calls and emails. In May and June of 2017, she described the negative reaction to the question of female toplessness as a public outcry. In a two-day period before passage of the ordinance, the Chamber received 150 telephone calls and email messages against allowance of female toplessness in Ocean City. She said that she forwarded all email messages to Jessica Waters, Ocean City's Director of Communications.

Plaintiffs did not testify, choosing instead to rely upon an expert witness, Debby Herbenick, who has a doctoral degree and serves as a professor in the Indiana University School of Public Health. Her particular areas of interest are sexual health and gender issues. She has special expertise in measurement and can evaluate research papers for trustworthiness and credibility. Herbenick indicated that eleven or twelve nationwide studies have been conducted in the area of human sexuality, and she has been involved in nearly all of those studies. The studies have included general population sensibilities of thousands of Americans. She conceded she had not performed any studies regarding the specific sensibilities of Ocean City residents or visitors, and she has no demographic data as to visitors to Ocean City. Accordingly, a foundational issue existed as to her opinion on the question at hand, but the Court allowed her testimony, nonetheless. She testified that the similarity between the female breast and male breast is not

reflected in the ordinance. She also opined that public sensibilities were not accurately reflected in the ordinance based upon her review of approximately one thousand pictures of people on the beach in Ocean City, apparently posted on social media, showing exposure of various portions of breasts, although she acknowledged that none of the pictures clearly showed a female areola or nipple. Besides looking at the pictures, Herbenick also said she based her opinion on her review of peer-reviewed studies.

The Court does not find Dr. Herbenick's opinion persuasive. More important, it is not strictly relevant to the issue at hand. Instead of her testifying as to what Ocean City's citizens' public sensibilities *are*, she testified as to what she thought they *should be*.

Plaintiffs did not muster any evidence to show that Ocean City's citizens shared their view that women should be able to be bare-chested in public places as men are. Plaintiffs argued the ordinance was flawed because no measurement to show the public's sensibility is reflected in the ordinance. Public sensibilities, or "moral sensibilities," the factors identified by the *Biocic* opinion, are inherently somewhat impressionistic. That does not mean they cannot be measured, but assessment of public sensibilities does not require precise scientific sampling. The question is more whether Ocean City's witnesses, by virtue of their roles and positions, are equipped to "take the pulse" of the community and its visitors, and the Court finds they are. They are, therefore, accredited as accurate barometers of public sensibilities in Ocean City. It is a part of our democratic culture that elected representatives can, and do, speak for the public. Here, the Council members and the Mayor are representative of their community's views and aspirations. The Mayor and the Council member that testified demonstrated that they are well-informed— that they are "in touch" with the community they represent. By adopting the subject ordinance unanimously, the elected representatives have expressed the referenced views and aspirations of

the community.   Through this evidence, Ocean City has shown its ordinance is substantially related to an important governmental objective, the protection of public sensibilities.   "Equal protection" has not been denied here because any gender discrimination implicit in the subject ordinance is substantially related to an important governmental interest.

One additional thing deserves mention:   *Biocic* recognized that "public morals are not static," 928 F.2d at 116 n.4, implying that they can and do change over time.   Although Plaintiffs believe public sensibilities have changed to the point of ready acceptance by the public of bare-breasted females in public—other than for breastfeeding infants, they failed to counter the quite convincing evidence presented by Ocean City to the contrary.   That does not mean that public sensibilities recognized today will always be regarded as appropriate, but, for now, the Court has seen no evidence that the public sensibilities are not what Ocean City's representatives say they are in the ordinance.

Consequently, Plaintiffs have not shown they are likely to succeed on the merits of this case and, therefore, they are not entitled to the extraordinary remedy of preliminary injunctive relief.   Accordingly, the Court DENIES Plaintiffs' Motion for Preliminary Injunction (ECF No. 21).

DATED this ⎯⎯ 20 ⎯⎯ day of December, 2018.

BY THE COURT:

James K. Bredar
Chief Judge

11