IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **CHELSEA C. ELINE, *et al.*,** | * | |
| **Plaintiffs** | * | |
| **v.** | * | **CIVIL NO.  JKB-18-0145** |
| **TOWN OF OCEAN CITY, MD.,** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

Plaintiffs Chelsea C. Eline, Megan A. Bryant, Rose R. MacGregor, Christine E. Coleman, and Angela A. Urban filed suit against Defendant Town of Ocean City, Maryland ("Ocean City")[1] alleging that Emergency Ordinance 2017-10—which bans females, but not males, from publicly displaying their breasts—is a violation of the Constitution's Equal Protection Clause and Article 46 of the Maryland Declaration of Rights.  Plaintiffs seek a declaratory judgment, attorneys' fees and costs, discretionary damages, and a permanent injunction to prevent Ocean City from continuing to enforce Emergency Ordinance 2017-10.  Now pending before the Court are Defendant's Motion for Summary Judgment (ECF No. 60), Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 61), and Plaintiffs' Motion to Exclude Richard Meehan and Mary P. Knight as Expert Witnesses (ECF No. 63).  No hearing is required.  *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Defendant's Motion for Summary Judgment will be granted,

---

[1] Plaintiffs originally filed suit against several individual defendants in addition to Ocean City.  (*See* Compl., ECF No. 1.)  The Court ordered the Clerk to terminate the individual defendants pursuant to the Plaintiffs' Stipulation of Dismissal (ECF No. 16).  (Order, ECF No. 17.)  Accordingly, Ocean City is the only remaining defendant.

Plaintiffs' Cross-Motion for Summary Judgment will be denied, and Plaintiffs' Motion to Exclude Richard Meehan and Mary P. Knight as Expert Witnesses will be denied as moot.

## I. *Background*

Ocean City is a town located along Maryland's Atlantic coastline which receives millions of visitors each year. (Meehan Decl., Def. M.S.J Ex. A, Attach. 5 at 56, ECF No. 60-2.)  Around August 17, 2016, Plaintiff Chelsea Eline submitted written inquiries to both the Ocean City Police Department and the Worcester County State's Attorney "regarding her stated intention to go 'topless' in Ocean City[,] including on its beaches." (Meehan Decl., Def. M.S.J Ex. A ¶¶ 4–5.)  In response to her inquiries, the Worcester County State's Attorney requested legal guidance from the Maryland Attorney General's Office on the issue.  (*Id.* ¶ 5.)

As the debate over female toplessness in Ocean City became public, the Ocean City Council began receiving comments regarding Ocean City's position on female toplessness. (*Id.* ¶ 7; Chavis Decl., Def. M.S.J Ex. B ¶¶ 3–4, ECF No. 60-3; Comments, Def. M.S.J. Ex. D, ECF No. 60-5.)  The overwhelming majority of these commenters expressed disapproval of public female toplessness in Ocean City, with many saying they would not return to Ocean City if it permitted female toplessness. (*See* Comments, Def. M.S.J. Ex. D.)

On June 9, 2017, the Mayor of Ocean City, Richard Meehan, publicly stated that both he and the Ocean City Council "are unanimously opposed to women being topless on our beach or in any public area in Ocean City." (Meehan Decl., Def. M.S.J Ex. A, Attach. 1.)  He further elaborated: "While we respect [Eline's] desire to express what rights she believes she may have, Ocean City is a family resort and we intend to do whatever is within our ability to also protect the rights of those families that visit us each year." (*Id.*)

On June 10, 2017, "to preserve and protect the family-oriented character and quality of Ocean City and its beaches, and to protect the sensibilities of Ocean City's residents and visitors," Ocean City adopted Emergency Ordinance 2017-10 (hereinafter, "Ordinance"). (Meehan Decl., Def. M.S.J Ex. A ¶ 8.) The Ordinance states: "It shall be unlawful for any person to be on the beach, boardwalk, public parks, parking lots, streets, avenues, alleys or any other public place with the person's specified anatomical areas nude or in a state of nudity." (Ord. No. 2017-10, Sec. 58-193, Pl. M.S.J. Ex. 5, ECF No. 61-7.) Included within the definition of "specified anatomical areas" is "a female breast below a point immediately above the top of the areola." (*Id.* Sec. 58-192.) Male breasts are not included within this definition. The Ordinance further defines "Nude, or a State of Nudity" to "mean[] the showing of the human male or female genitals, pubic area, vulva, anus, or anal cleft with less than a full opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state."[2] (*Id.*) Those who violate the Ordinance will "be guilty of a municipal infraction and be subject to a fine of up to $1,000.00." (*Id.* Sec. 58-194.)

The Ordinance also memorializes the City Council's reasons for passing the ban on female toplessness, explaining: "Protecting the public sensibilities is an important governmental interest based on an indisputable difference between the sexes. Further, a prohibition against females baring their breasts in public, although not offensive to everyone, is still seen by society as unpalatable." (*Id.* Sec. 58-191.)

On June 14, 2017, the Maryland Attorney General's Office issued its legal guidance on the issue, concluding, "[i]t is our view that Maryland courts would hold that prohibiting women from

---

[2] For ease of reference, the Court will refer to the restrictions in the Ordinance as a ban on female toplessness, though the Court acknowledges that the restrictions as defined in the Ordinance are more complicated than that phrase may suggest.

exposing their breasts in public while allowing men to do so under the same circumstances does

not violate the federal or State Constitution." (Meehan Decl., Def. M.S.J Ex. A, Attach. 3 at 11.)

On January 16, 2018, Plaintiffs filed suit against Ocean City. (Compl.) In 2018, Mayor

Meehan and Council Members Lloyd Martin and Matthew James were re-elected. (Def.

Interrogatory Ans., Def M.S.J. Ex. G at 2, ECF No. 60-8.) On December 7, 2018, the Court held

a hearing on Plaintiffs' Motion for Preliminary Injunction (ECF No. 21). (Motion Hearing, ECF

No. 42.) The Court subsequently denied Plaintiffs' request for a preliminary injunction, finding

that Ocean City had demonstrated that the Ordinance is "substantially related to an important

governmental objective," namely, "the protection of public sensibilities," and that Plaintiffs did

not show they were likely to succeed on the merits. *Eline v. Town of Ocean City*, 382 F. Supp. 3d

386, 393 (D. Md. 2018). Accordingly, the Court denied Plaintiffs' request for a preliminary

injunction. *Id.*

## II.    *Evidentiary Issues*

Before the Court considers the merits of the parties' cross-motions for summary judgment,

the Court first considers the parties' challenges to the proffered evidence.

### a.   *Plaintiffs' Motion to Exclude Expert Witnesses*

Plaintiffs filed a motion to exclude Mayor Richard Meehan and Counsel Member Mary P.

Knight as expert witnesses. (ECF No. 63.) In response, Ocean City argues that it does not seek to

offer Mayor Meehan and Counsel Member Knight as expert witnesses, but rather as fact witnesses.

(Opp'n Mot. Exclude at 2, ECF No. 68-1.) Plaintiffs reply that their motion to exclude should be

granted on that basis. (Reply Mot. Exclude at 1, ECF No. 72.) However, because Mayor Meehan

and Counsel Member Knight are not being offered as expert witnesses, Plaintiffs' motion to

exclude their testimony as expert witnesses is moot.  Accordingly, the Court will deny Plaintiffs'

motion to exclude as moot.

Plaintiffs also argue that "lay persons, and specifically Mayor Meehan and Council

Member Knight, are not qualified to identify a designated population's public sensibilities." (*Id.*)

Pursuant to Federal Rule of Evidence 701, witnesses who are not testifying as experts may provide

"testimony in the form of an opinion" so long as it is "(a) rationally based on the witness's

perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in

issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope

of Rule 702."

Mayor Meehan testified, "I and members of the Ocean City Council received many emails

and phone calls from Ocean City residents and vacationers expressing great concern about the

possibility that Ocean City beaches would 'become topless beaches.'" (Meehan Decl., Def. M.S.J

Ex. A ¶ 7.)  These email messages are attached to Mayor Meehan's Declaration. (Comments, Def.

M.S.J. Ex. D.)  He also testified that Ocean City identifies itself as a "family-friendly resort."

(Meehan Decl., Def. M.S.J Ex. A ¶ 11.)  This is also supported by attached documentation

promoting Ocean City as a family-friendly destination.  (*See* Meehan Decl., Def. M.S.J Ex. A,

Attach. 4 at 20–21.)  Such testimony reflects Mayor Meehan's personal observations, is helpful to

determine the purpose of the Ordinance, and is not based on specialized or technical knowledge.

Similarly, Council Member Mary Knight's testimony reflects her personal perceptions

based on interactions with members of the community.  At the preliminary injunction hearing, she

testified that she heard from "constituents, tourists, people that live in Ocean City, nonresidents,

[and] taxpayers" that they did not support public female toplessness in Ocean City.  (Hearing

Transcript at 74, ECF No. 51.)  Council Member Knight said she did not receive any phone calls

or have any "face-to-face communications" with individuals who supported public female toplessness. (*Id.* at 77.) Based on these interactions, she stated that she believed the Ordinance reflected public sensibilities in Ocean City. (*Id.*)

The Court finds that, like Mayor Meehan's testimony, Council Member Knight's testimony is not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. While lay witnesses may not be able to define precisely what the public sensibilities of one particular area are from a scientific or statistical standpoint, they certainly may testify as to what they have observed and experienced in the course of their personal community interactions. Such information is relevant to determining the purpose of the Ordinance at issue here. Therefore, the Court will consider the testimony of Mayor Meehan and Council Member Knight as fact witnesses pursuant to Rule 701.

### b. *Defendant's Motion to Exclude Testimony of Dr. Debby Herbenick*

Plaintiffs provided an expert report from Dr. Debby Herbenick in support of their motion for summary judgment. (Herbenick Rep., Pl. M.S.J. Ex. 13, ECF No. 61-15.) Dr. Herbenick is a professor at the Indiana University School of Public Health in the Department of Applied Health Science, where she also serves as the Director of the Center for Sexual Health Promotion. (*Id.* at 1.) In its summary judgment motion, Ocean City argues that the testimony of Dr. Herbenick is not admissible under Rule 702 of the Federal Rules of Evidence because her opinions are not "credible," "reliable," "relevant," or "probative." (Def. M.S.J. Mem. at 28, ECF No. 60-1.) Because of this, Ocean City argues, Dr. Herbenick's testimony "should not bear in any way on Defendant's summary judgment motion or in the case generally." (*Id.*)

Rule 702 of the Federal Rules of Evidence provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may offer testimony if:

(a) the expert's scientific, technical, or other specialized knowledge

will help the trier of fact to understand the evidence or to determine

a fact in issue; (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods;

and (d) the expert has reliably applied the principles and methods to

the facts of the case.

In other words, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

At the hearing for a preliminary injunction, the Court permitted Dr. Herbenick to testify. However, in its memorandum denying Plaintiffs' request for a preliminary injunction, the Court noted it did "not find Dr. Herbenick's opinion persuasive." *Eline*, 382 F. Supp. 3d at 392. The Court found that Dr. Herbenick's opinion was "not strictly relevant to the issue at hand," because "[i]nstead of her testifying as to what Ocean City's citizens' public sensibilities *are*, she testified as to what she thought they *should be*." *Id.* at 392–93.

The Court finds that the same flaws with Dr. Herbenick's testimony at the preliminary injunction hearing are present in her expert report. Dr. Herbenick's opinion that "the ordinance overstates differences between females and males in terms of breasts/chests, focusing heavily on sexualization" does not help the Court to understand whether Ocean City's public sensibilities support a ban on public female toplessness. (Herbenick Rep. at 3.) Nor does her opinion that female toplessness "is not generally seen as 'unpalpable' in contemporary America" shed light on whether female toplessness is seen as unpalpable in Ocean City specifically. (*Id.* at 4.) Dr. Herbenick also testified that she was "not able to identify U.S. population-level data on the topic

[of female toplessness] from a reputable, scientific source." (*Id.* at 6.)   Such testimony raises questions about whether Dr. Herbenick's testimony would even be reliable in determining nationwide views on public female toplessness.

The Court finds that Dr. Herbenick's supplemental expert report is also irrelevant to the questions at issue in this case.   Dr. Herbenick's supplemental expert report includes a series of photographs taken in Ocean City from 1906 to the present day.   (Herbenick Supp. Rep., Pl. M.S.J. Ex. 14, ECF No. 61-16.)   These photographs demonstrate the massive transformation in swimwear over the course of the last century, from long skirts to the modern bikini.   (*Id.*)   But while these photographs show that community norms have changed regarding appropriate beachwear, they do not demonstrate that community norms in Ocean City have evolved to embrace public female toplessness.[3]

Accordingly, the Court does not find Dr. Herbenick's supplemental expert report to be helpful to "understand the evidence or to determine a fact in issue" in this case.   Fed. R. Evid. 702. The issue facing the Court is not whether society's ideas around appropriate beachwear have evolved over time, as they undeniably have, or whether society should differentiate between male and female breasts—rather, the issue is whether banning public female toplessness to protect the public sensibilities is constitutional.   Because neither Dr. Herbenick's expert report not her supplemental expert report help the Court evaluate the issues in this case, the Court finds them irrelevant and will not consider either report in making its decision.

### III.   Analysis

#### a.  Standard

---

[3] Even an undated video still from what is titled, "Best Body on the Beach Contest," which shows a woman wearing large pasties covering her nipples, does not provide any evidence suggesting that the public sensibilities of Ocean City as a whole support female toplessness.  (Herbenick Supp. Rep. at 13.)

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Still, the opposing party must present those facts and cannot rest on denials. The opposing party must set forth specific facts, either by affidavit or other evidentiary showing, demonstrating a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Furthermore, the opposing party must set forth more than a "mere . . . scintilla of evidence in support of [its] position." *Anderson*, 477 U.S. at 252.

### b. *Equal Protection*

Classifications based on gender are subject to "heightened review under the Constitution's equal protection guarantee." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017). Such classifications require an "'exceedingly persuasive justification.'" *United States v. Virginia*, 518 U.S. 515, 531 (1996) (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)). As the Supreme Court explained, this heightened scrutiny "responds to volumes of history" of sex discrimination in this county. *Id*. The party defending a gender-based classification must show "'at least'" that the "'classification serves important governmental objectives and that the

discriminatory means employed are substantially related to the achievement of those objectives.'" *Sessions*, 137 S. Ct. at 1690 (quoting *Virginia,* 518 U.S. at 533.).  Furthermore, "the classification must substantially serve an important governmental interest *today*," and not merely reflect "'unjustified inequality'" that was previously "'unnoticed and unchallenged.'"  *Sessions*, 137 S. Ct. at 1690 (quoting *Obergefell v. Hodges*, 135 S.Ct. 2584, 2603 (2015)).  "The burden of justification is demanding and it rests entirely on the State." *Virginia*, 518 U.S. at 533.

This "heightened review standard" does not mandate that all gender-based classifications must fail; rather, it recognizes that "[p]hysical differences between men and women . . . are enduring."  *Id*.  Accordingly, laws may acknowledge the physical differences between men and women, so long as such gender-based classifications do not "create or perpetuate the legal, social, and economic inferiority of women."  *Id.* at 534.  *See, e.g.*, *Nguyen v. INS*, 533 U.S. 53 (2001) (upholding law requiring unmarried citizen fathers, but not unmarried citizen mothers, to officially acknowledge relationship to foreign-born child in order to pass U.S. citizenship to such child because of biological differences between the sexes related to childbirth).

This Court, following the guidance of the United States Court of Appeals for the Fourth Circuit, will "assume, without deciding" that a classification based on "anatomical differences between male and female" qualifies as a gender-based distinction in the context of the equal protection analysis.  *United States v. Biocic*, 928 F.2d 112, 115 (4th Cir. 1991).  *But see Ways v. City of Lincoln*, 331 F.3d 596, 600 n.3 (8th Cir. 2003) ("Arguably, the higher standard would not apply because the 'discrimination' was based on a real physical difference between men and women's breasts, thus men and women were not similarly situated for equal protection purposes."); *State v. Lilley*, 204 A.3d 198, 208 (N.H. 2019), *cert. denied*, 140 S. Ct. 858 (2020)

(finding that challenge to ban on exposure of female but not male breasts was not a gender-based classification and applying rational basis review).[4]

The Court will now determine: 1) whether the "'classification serves important governmental objectives,'" and 2) whether "'the discriminatory means employed are substantially related to the achievement of those objectives.'" *Sessions*, 137 S. Ct. at 1690 (quoting *Virginia*, 518 U.S. at 533.)

### i. *Important Governmental Objective*

Ocean City's stated purpose for enacting the Ordinance is that "[p]rotecting the public sensibilities is an important governmental interest." (Ord. No. 17-2020, Sec. 58-191.) The parties do not dispute that this is Ocean City's purpose for enacting the Ordinance. The Court of Appeals for the Fourth Circuit has held that "protecting the moral sensibilities of that substantial segment of society that still does not want to be exposed willy-nilly to public displays of various portions of their fellow citizens' anatomies that traditionally in this society have been regarded as erogenous zones" is an "important government interest" under the equal protection analysis. *Biocic*, 928 F.2d at 115–16. The Fourth Circuit further found that "(whether justifiably or not in the eyes of all) the female, but not the male, breast" qualifies as such an "erogenous zone[]." *Id.* at 116. Based on this finding, the Fourth Circuit upheld a United States Fish and Wildlife regulation which, based on a local county ordinance, prohibited women, but not men, from showing their breast "with less than a fully opaque covering on any portion thereof below the top of the nipple." *Id.* at 113 (internal quotations omitted).

---

[4] Because the Court finds that the Ordinance survives the heightened scrutiny applied to gender-based classifications under an equal protection challenge, the Court also finds that the Ordinance would survive rational basis review if this Ordinance was not a gender-based distinction.

As this Court noted in its decision denying Plaintiffs' motion for a preliminary injunction, "this Court must respect *Biocic* as stating the law in the Fourth Circuit." *Eline*, 382 F. Supp. 3d at 390. Plaintiffs argue that the Supreme Court's decisions in *Virginia*, 518 U.S. 515, *Sessions*, 137 S. Ct. 1678, and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) are intervening decisions which mean this Court is no longer bound to follow *Biocic*. (Pl. M.S.J. Mem. at 6–7.) The Court does not agree. While these decisions have clarified the proper analysis required when evaluating gender-based classifications under the equal protection framework, they have not changed that analysis such that *Biocic* is no longer applicable. The Court in *Biocic* found that the ban on female toplessness did not violate the equal protection clause because it was "substantially related to an important governmental interest." *Biocic*, 928 F.2d at 115. This standard was reaffirmed in each of the cases Plaintiffs cite to as intervening precedent: *Sessions*, 137 S. Ct. at 1690; *Virginia*, 518 U.S. at 533; and *J.E.B.*, 511 U.S. at 137 n.6. Accordingly, the Court finds that *Biocic* is still binding precedent.

The fact that the vast majority of courts around the country that have faced challenges similar to the one at issue here have upheld ordinances banning females, but not males, from being topless in public further supports this Court's finding that *Biocic* remains good law. *See, e.g.*, *Free the Nipple - Springfield Residents Promoting Equal. v. City of Springfield*, 923 F.3d 508, 512 (8th Cir. 2019) (ordinance banning female toplessness did not violate the equal protection clause because it was "substantially related to [city's] important governmental interests in promoting public decency and proscribing public nudity to protect morals, public order, health, and safety"); *Tagami v. City of Chicago*, 875 F.3d 375, 380 (7th Cir. 2017), *as amended* (Dec. 11, 2017) (Chicago ordinance banning female but not male toplessness did not violate the equal protection clause); *Buzzetti v. City of New York*, 140 F.3d 134, 142 (2d Cir. 1998) (zoning ordinance

regulating female topless entertainment but not male topless entertainment did not violate the equal protection clause because "preventing crime, maintaining property values, and preserving the quality of urban life" are important government objectives substantially related to the ordinance); *J & B Soc. Club No. 1, Inc. v. City of Mobile*, 966 F. Supp. 1131, 1139 (S.D. Ala. 1996) (assuming distinction between male and female breasts is gender-based and finding "the distinction is substantially related to an important governmental interest"); *Craft v. Hodel*, 683 F. Supp. 289, 300 (D. Mass. 1988) (ban on female toplessness at Cape Cod National Seashore did not violate equal protection clause because ordinance was "substantially related to the achievement of the government's important governmental objective of protecting the public from invasions of its sensibilities") (internal quotations omitted); *see also State v. Lilley*, 204 A.3d at 208 (ordinance banning female but not male toplessness passed rational basis review where purpose was to "uphold and support public health, public safety, morals and public order") (internal quotations omitted).

In response to this weight of authority, Plaintiffs highlight the recent decision of the United States Court of Appeals for the Tenth Circuit which upheld a preliminary injunction barring implementation of Fort Collins, Colorado's ban on public female, but not male, toplessness. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792 (10th Cir. 2019).  In support of its ban on public female toplessness, Fort Collins argued that the ban served three important governmental objectives: 1) protecting children from public nudity; 2) promoting traffic safety; and 3) maintaining public order. *Id.* at 802.  The Tenth Circuit upheld the district court's decision that the plaintiffs "made a strong showing of their likelihood of success on the merits" because these were not important government interests substantially related to an ordinance

banning public female toplessness. *Id.* at 804–05. In doing so, the Tenth Circuit acknowledged

that its opinion reflected the "minority viewpoint." *Id.* at 805.

Though the Tenth Circuit focused its analysis on the three proffered governmental interests

at issue in *Free the Nipple-Fort Collins*—none of which are at issue in this case—it also noted that

similar ordinances premised on a government interest in public morality, such as the one at issue

in *Biocic*, were vulnerable to being found unconstitutional:

> [A]lthough the City itself never asserted public morality as a
> justification for banning female toplessness, notions of morality
> may well underlie its assertions that conflicts will break out, and
> distracted drivers will crash, if it allows women to be topless in
> public. But such notions, like the fear that topless women will
> endanger children, originate from the sex-object stereotype of
> women's breasts . . . [T]hat stereotype doesn't stand up to scrutiny.

*Id.* at 804. The Tenth Circuit found that banning female toplessness perpetuates the stereotype

that women's breasts are predominantly sex objects, which contributes to broader discrimination

against women and therefore fails to further any important governmental interest. *Id.* at 803–04.

The Court acknowledges that the Fourth Circuit issued its decision in *Biocic* almost thirty

years ago. During that time, the Supreme Court's treatment of sex and gender has evolved

substantially. In the last thirty years, state laws criminalizing sexual conduct between members of

the same sex have been ruled unconstitutional, *Lawrence v. Texas*, 539 U.S. 558 (2003), as have

laws prohibiting same-sex marriage, *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). As Judge

Murnaghan stated almost thirty years ago in his concurring opinion in *Biocic*:

> The time may well soon come, as it has already with the French and
> others, when the perceived public sense of outrage will wane.
> [Female toplessness] will then be classified as non-criminal, not
> because it was a bold blow for 'liberty,' but because it was too
> trifling—perhaps even childish—a matter for a community to spend
> time and energy addressing.

*Biocic*, 928 F.2d at 118 (Murnaghan, J., concurring).  *See also Lawrence*, 539 U.S. at 579

("[T]imes can blind us to certain truths and later generations can see that laws once thought

necessary and proper in fact serve only to oppress.")  This Court questions whether laws which

distinguish between men and women based on "public sensibilities" can survive indefinitely.  Such

amorphous concepts are vulnerable to prejudice and stereotypes grounded more in fear than in

reality.

Yet though the Court acknowledges the changes in society and the evolution of the

Supreme Court's jurisprudence on gender and sexuality over the last thirty years, the Court remains

equally cognizant of its duty to follow precedent and "not to mandate [its] own moral code."

*Planned Parenthood v. Casey*, 505 U.S. 833, 850 (1992).  As the Supreme Court has explained,

"*[s]tare decisis* . . . promotes the evenhanded, predictable, and consistent development of legal

principles, fosters reliance on judicial decisions, and contributes to the actual and perceived

integrity of the judicial process."  *Payne v. Tennessee*, 501 U.S. 808, 827 (1991).  *See, e.g.*, *Condon*

*v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014) ("Coherent and consistent adjudication requires

respect for the principle of stare decisis and the basic rule that the decision of a federal circuit court

of appeals left undisturbed by United States Supreme Court review is controlling on the lower

courts within the circuit."); *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 709 (E.D. Va.

2004), *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005) ("a district court in

a circuit owes obedience to a decision of the court of appeals in that circuit and must follow it until

the court of appeals overrules it") (citing Moore's Federal Practice, 134.02(2), 3rd Ed., 2000).

Ultimately, *Free the Nipple-Fort Collins*, 916 F.3d 792, is not the law in the Fourth Circuit.

Nor does this Court find that any of the Supreme Court decisions cited by Plaintiffs require this

Court to invalidate an ordinance which distinguishes between men and women based on physical

differences.   Even under the heightened scrutiny required for gender-based classifications, the Supreme Court has consistently maintained that physical differences between men and women— as opposed to stereotypes about men or women—provide a constitutionally sound basis for laws which treat men and women differently.  *See, e.g.*, *Nguyen*, 533 U.S. 53; *Virginia*, 518 U.S. at 533.

Whether or not society *should* differentiate between male and female breasts is a separate inquiry from whether it is constitutional to do so.  Following the precedent set in *Biocic*, the Court finds that protecting the public sensibilities from the public display of areas of the body traditionally viewed as erogenous zones—including female, but not male, breasts—is an important government objective.   Therefore, Ocean City's stated purpose of the Ordinance to protect the public sensibilities passes the first stage of the heightened scrutiny analysis.

### ii.   Substantially Related

Having determined that protecting the public sensibilities is an important governmental objective, the Court next turns to the question of whether Ocean City's ban on female toplessness is substantially related to protecting the public sensibilities.

First, Plaintiffs argue that a ban on female toplessness does not reflect the public sensibilities of the residents and visitors of Ocean City.  (Pl. M.S.J. Mem. at 8–9, 15.)  Ocean City argues that the comments received by elected officials and the re-election of the Mayor and members of the City Council—all of whom publicly supported a ban on female toplessness— demonstrates that Ocean City's public sensibilities support a ban on female toplessness.  (Def. M.S.J. Mem. at 9–12.)  Plaintiffs, however, argue that Mayor Meehan's 2018 re-election should hold no weight in determining the public sensibilities because, considering the number of people who did not cast a ballot, only 28% of eligible voters voted for the Mayor in the last election, and he faced opposition for re-election for only the second time in twelve years.  (Pl. M.S.J. Mem. at

8.)  Plaintiffs further argue that this data does not include the more than eight million visitors Ocean City receives each year.  (*Id.*)  Nor does election data reveal any information as to why voters voted as they did or what issues voters considered (or did not) when they made their decision to go to the polls or stay home.  (*Id.*)  Last, Plaintiffs argue that there is no evidence that comments from the public opposing toplessness as heard by the Mayor and City Council were at all representative of the broader views of the community.  (*Id.* at 9.)

Though Plaintiffs argue Ocean City's data does not accurately reflect public sensibilities, Plaintiffs have failed to provide any reliable data of their own suggesting that the public sensibilities of Ocean City in particular approve of public female toplessness.  As this Court stated in its decision denying Plaintiffs' preliminary injunction, "[i]t is a part of our democratic culture that elected representatives can, and do, speak for the public."  *Eline*, 382 F. Supp. 3d at 393. Elected representatives best speak for and represent the views of their constituent communities because, as the testimony of Mayor Meehan and Council Member Knight demonstrates, community members go to their elected representatives with their fears and hopes for their community.  The elected representatives then take action to reflect those concerns, as occurred here with the passing of the Ordinance.  If the constituents believe their elected representatives are no longer listening to their concerns or accurately speaking for them, then the community may vote those representatives out of office.  Incumbents lose elections with some regularity in our robust American democratic process, precisely because their views are thought to no longer represent those of the community.  This process holds elected officials accountable to their constituents and best ensures that the views of the community are reflected in the acts of their elected representatives.  It provides confidence that the action taken by City officials truly does reflect public sensibilities.

Second, Plaintiffs argue that Ocean City has presented no evidence that banning female toplessness is substantially related to protecting the public sensibilities.  However, this argument misinterprets the governmental interest served by Ocean City's Ordinance.  Where, as here, the important government interest being served by an ordinance is "societal disapproval of nudity in public places and among strangers," "[t]he statutory prohibition is not a means to some greater end, but an end in itself."  *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 571–72 (1991) (holding that public indecency law prohibiting nude dancing did not violate First Amendment).  Accordingly, the Court need not determine whether protecting the public sensibilities by banning female toplessness promotes some separate good; rather, the ban itself accomplishes the government's stated purpose of protecting the public sensibilities from public nudity.

Because the Court finds that there is no genuine dispute of material fact that Ocean City's Ordinance is substantially related to the important governmental objective of protecting the public sensibilities, the Court will grant Ocean City summary judgment on Plaintiffs' equal protection claim.[5]

## IV.    *Maryland Declaration of Rights*

Article 46 of the Maryland Declaration of Rights states that "[e]quality of rights under the law shall not be abridged or denied because of sex."  This provision "flatly prohibits genderbased classifications, absent substantial justification."  *Giffin v. Crane*, 716 A.2d 1029, 1037 (Md. 1998).  Because the Court has found "'exceedingly persuasive justification,'" *Sessions*, 137 S.Ct. at 1690 (quoting *Virginia*, 518 U.S. at 531), for Ocean City's Ordinance in the course of its equal protection

---

[5] Because the Court finds that no constitutional violation occurred, the Court will also grant summary judgment to Ocean City on Plaintiffs' claim for municipal liability.  *See Owens v. Baltimore City State's Att'ys Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("[A] municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights.") (citing *Monell v. N.Y. City Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

analysis, the Court also finds "substantial justification," *Giffin*, 716 A.2d at 1037, for the Ordinance. Accordingly, for the same reasons the Court will grant Ocean City's motion for summary judgment on Plaintiffs' equal protection claim, it will also grant Ocean City's motion for summary judgment on Plaintiffs' claim under Article 46 of the Maryland Declaration of Rights.

## V.   *Conclusion*

For the foregoing reasons, an Order shall enter granting Defendants' Motion for Summary Judgment; denying Plaintiffs' Motion for Summary Judgment; and denying Plaintiffs' Motion to Exclude as moot.


DATED this __7th__ day of April, 2020.


BY THE COURT:


/s/

James K. Bredar
Chief Judge